UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:12-cr-00022-LRH |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| SCOTT H. SUMMERHAYS, | |
| Defendant. | |

Before the court is petitioner Scott H. Summerhays' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 184. The United States filed a response, (ECF No. 187), Summerhays replied, (ECF No. 190), and subsequently filed two supplements (ECF Nos. 191, 192). Upon review, the court denies his motion and he is denied a certificate of appealability.

I.     **BACKGROUND**

On February 22, 2012, Summerhays was indicted on twenty-four counts of violations of the United States Code, including counts of wire fraud, money laundering, identity theft, and aggravated identity theft. ECF No. 1. Between April 11, 2012, and September 5, 2013, the court appointed three different attorneys to represent Summerhays. ECF Nos. 7, 9, 33, 34, 63, 65, 68. Initially the Federal Public Defender's Office was appointed and did so until filing a sealed motion to withdraw in October of 2012. Summerhays would no longer confer with counsel or his defense investigator, and Summerhays expressed his desire to obtain private counsel.

///

1

When no progress was achieved with regard to private counsel, the Federal Public Defender's motion to withdraw was renewed and granted in December of 2012. The next counsel appointed to represent Summerhays was seasoned Criminal Justice Panel counsel, Cheryl Field-Lang, in January of 2013. Similar problems of communication and trust developed between Summerhays and Field-Lang, and Field-Lang's request to withdraw as Summerhays' counsel was granted in September 2013. Another seasoned Criminal Justice Panel attorney, Scott Edwards, was appointed shortly thereafter. On October 7, 2013, a little more than a month after Edwards' appointment, Summerhays moved to proceed in pro per pursuant to *Faretta v. California*. ECF No. 72.

At a lengthy *Faretta* hearing on October 21, 2013, the court admonished Summerhays to thoughtfully consider his decision to represent himself and to discuss it fully with Edwards. ECF Nos. 77, 88. The hearing was continued to October 28, 2013. After admonishing Summerhays again to fully consider his decision and a lengthy colloquy to ensure he understood all aspects and disadvantages of representing himself, the court found he had knowingly and voluntarily waived his right to counsel and granted his *Faretta* motion. ECF Nos. 79, 132. At Summerhays' request, Edwards was appointed to serve as stand-by counsel. *Id.* Thereafter, Edwards would appear and be present at all hearings, trial and sentencing throughout the balance of the case. During the October 28 hearing, the court emphasized that it would be looking cautiously at any further continuances past the February 11, 2014 trial date given the age of the case and the number of continuances previously granted. *Id.*

On February 6, 2014, the court was notified of Summerhays' desire to plead guilty to all charges and a change of plea hearing was scheduled on February 7. ECF Nos. 111, 112. Based on Summerhays' intention to change his pleas to guilty, the government filed a memorandum to aid the court in taking the guilty pleas to the 24 counts pending against Summerhays. ECF No. 110. At the February 7 change of plea hearing, Summerhays and standby counsel Edwards appeared at the hearing and Summerhays told the court that he wanted to plead guilty, but that he wanted a personally retained attorney, "not to go to trial, to look at [the government's memorandum]." ECF No. 112 at 3-4. At this time, petitioner had not retained another lawyer (*Id.*

at 4) and no request was made for the court to appoint one for him. Petitioner stated that he wanted "someone to help [him] through sentencing because some of these facts [the factual history set forth in the government's plea memorandum] are just incorrect." *Id.* at 5. The court then suggested that should petitioner choose to plead at that hearing, the court could go through the facts suggested by the government and petitioner could respond as to accuracy. *Id.* at 6. The court then asked petitioner, "So if it's your desire to proceed with the pleas at this time, I would – I certainly would tell you that you would be free to retain counsel for sentencing or to represent yourself, just as you have. And the court also recognizes that you have Mr. Edwards here, who is available as standby counsel, to provide similar assistance at public expense." *Id.* at 7-8. The court then again inquired as to whether it was petitioner's desire to enter changes of plea, to which Summerhays answered, "Yeah. Let's see what happens." *Id.* at 8. The court then conducted a lengthy plea canvas but determined that due to Summerhays' disagreement with some of the essential elements and facts outlined in the government's memo, the court would not take guilty pleas from him. The trial was reconfirmed for the following week. *Id.* at 47-54.

Trial commenced on February 11, 2014, with Summerhays representing himself and attorney Edwards being present as standby counsel. Upon commencement of trial and following jury selection, the government gave its opening statement and four witnesses from out of state testified. ECF No. 117. Their testimony was strong for the government and, at the end of the day, Summerhays announced that he wished to plead guilty to all counts (ECF No. 175). The court recommended that he take the night to think about his decision. The next morning, outside the jury's presence and in the presence of his standby attorney Edwards, Summerhays confirmed that he wished to go ahead with his guilty pleas. An extensive plea canvas was conducted and Summerhays pled guilty to each of the twenty-four counts. ECF Nos. 118, 136.

On March 30, 2015, the date set for Summerhays' sentencing, he stated that he was not qualified or prepared to proceed with sentencing. ECF No. 151. The court continued sentencing and reappointed standby counsel Edwards back as defense counsel for Summerhays. ECF Nos. 152. Summerhays was thereafter sentenced on May 18, 2015, to a total term of 234 months. ECF Nos. 155, 156.

Summerhays appealed to the Ninth Circuit which declined to consider his ineffective assistance of standby counsel claim on direct appeal and found the court had not abused its discretion in sentencing. ECF No. 179. Subsequently, the United States Supreme Court denied Summerhays' writ of certiorari. ECF No. 183. This Section 2255 petition follows.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner may move the court to vacate, set aside, or correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b). However, no hearing is required if the "'allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'" *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).

## III. DISCUSSION

Summerhays raises four asserted issues: (1) standby counsel was ineffective; (2) appellate counsel was ineffective for failing to raise a Sixth Amendment violation on appeal; (3) he was denied his Sixth Amendment rights to counsel; and (4) both sentencing counsel and appellate counsel were ineffective for failing to raise errors in the Presentence Investigation Report. The court now discusses each issue in turn.

### A. Standby Counsel Was Not Ineffective.

While the Sixth Amendment guarantees a right to counsel, there is also a "constitutional right to proceed *without* counsel when [the accused] voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807, 819-20 (1975). To have voluntarily and knowingly elected to self-represent himself, the defendant must have been "made aware of (1) the nature of

the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir. 1999) (per curiam) (internal quotations omitted).

Should a defendant exercise his or her right to self-representation, the Sixth Amendment does not protect that defendant from his own failures as counsel, nor does it provide a right to standby counsel. *See Faretta*, 422 U.S. at 834-35 n.46 (1975) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994) ("A defendant does not have a constitutional right to 'hybrid' representation."); *United States v. Cochrane*, 985 F.2d 1027, 1029 (9th Cir. 1993) ("We reject as a matter of law his argument that because he made some use of the standby counsel appointed to assist him, we should lay [the defendant's] errors at [the attorney's] feet."). Circuit courts around the country have come to similar conclusions. *See Wilson v. Parker*, 515 F.3d 682, 697 (6th Cir. 2008) ("To the extent [standby counsel] failed to act during trial, Wilson merely suffered the consequences of his decision to proceed pro se."); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) ("[T]he inadequacy of standby counsel's performance, without the defendant's relinquishment of his *Faretta* right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment."); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992) ("This court knows of no constitutional right to effective assistance of standby counsel."); *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) ("[T]he key limitation on standby counsel is that such counsel *not be responsible*—and not be perceived to be responsible—for the accused's defense.").

The court finds that Summerhays voluntarily and knowingly elected to represent himself. He came to the court requesting to represent himself on October 21, 2013. During that hearing the court directed Summerhays to confer with his then counsel, Edwards, to ensure he understood all that decision entailed. On October 28, 2013, Summerhays returned to court and affirmatively represented to the court, "I want to be in charge of my own case. No one knows my case like I do. . . .. I've been to school. I feel – I worked for my dad's law firm in Utah. And I feel

5

that I can undertake the task." ECF No. 132 at 3. The court specifically asked Summerhays whether he was aware of the charges against him and the possible penalties of those charges, including prison sentences, monetary fines, restitution, and terms of supervised release. *Id.* When asked whether he understood the indictment, Summerhays responded "I know it by heart, Your Honor." *Id.* at 13. Further, the court reminded Summerhays that the court had already ruled he would remain in custody while the charges were pending and admonished him that this would seriously limit his access to materials, his ability to prepare his defense, use legal resources such as the law library, and access to witnesses and his standby counsel. *Id.* at 15-17, 19. Upon hearing this admonishment, Summerhays responded that it "bothers me. But I understand it. And I'll deal with it." *Id.* The court then asked him three times if it was his desire to waive his right to counsel and represent himself even knowing all of the disadvantages. *Id.* at 29. Petitioner answered affirmatively, going so far as to say "Your Honor, I am the only one who can be prepared." *Id.*

Even though Summerhays was representing himself, he now argues that standby counsel was ineffective for failing to subpoena witnesses, a forensic accountant, and a graphologist as he requested. Petitioner also argues that the court ordered standby counsel Edwards to subpoena witnesses. On no occasion did the court order Edwards to subpoena witnesses or hire any experts. The record shows just the opposite: the court on numerous occasions told Summerhays it was his responsibility and burden to draft subpoenas for the court to approve. The court made clear Edwards' role was advisory: he was there to answer questions and provide counsel should petitioner request it. Further, the court admonished petitioner repeatedly that his ability to speak with witnesses and retain experts would be limited because he chose to represent himself.

Petitioner further cites to the October 21, 2013 hearing, that occurred prior to petitioner electing to represent himself, during which the court told Summerhays what his attorney could do for him, including applying for investigative fees, locating and having witnesses served, and making determinations as to what evidence is admissible. These are the responsibilities of counsel, not standby counsel. The court went through these as a reminder of what petitioner could have his attorney do, not to show the responsibilities of standby counsel. And while these

6

resources were available to petitioner, Summerhays' failure to utilize them was his choice, not that of his standby counsel.

Even if the court were to analyze this claim under the *Strickland* standard for ineffective assistance of counsel, nothing in the record indicates that Edwards' work as standby counsel was deficient. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to establish ineffective assistance of counsel a petitioner must show that his counsel's performance fell below an objective standard of reasonableness, and that but for counsel's error, petitioner's proceeding would have been different). As a pro se defendant it was Summerhays' responsibility to be prepared for trial and conduct his defense, as he promised this court he would when it granted his request to represent himself. He also had the available assistance of attorney Edwards, first as Summerhays' appointed attorney for approximately six weeks in September and October of 2013, and then as his standby counsel for over three months pending trial, and again as appointed counsel for sentencing. Edwards attended and was present at every proceeding before the court from October 13, 2013, through sentencing in May 2015.

As of the date of this order, other than self-serving protestations by Summerhays, there still is no competent showing of a specific failure to develop a material defense to any of the charges against Summerhays.

For all the above reasons, the court finds Summerhays' claim of ineffective assistance of standby counsel is without merit.

**B. Appellate Counsel Was Not Ineffective and Defendant's Sixth Amendment Rights Were Not Violated.**

Claims for ineffective assistance of appellate counsel are reviewed under the *Strickland* standard, but for these claims, the performance and prejudice prongs partially overlap. *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989). Effective appellate advocacy actually requires weeding out the weaker issues that are less likely of success. *Id.* The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason – because the omitted issue has little or no likelihood of success on appeal. *Id.*

7

Summerhays argues that his appellate counsel was ineffective because Summerhays "unequivocally asked the court to appoint counsel" during his change of plea hearing on February 7, 2014, and thus his Sixth Amendment rights were so plainly violated that appellate counsel should have raised the issue on appeal. First, Summerhays has falsely asserted that he "unequivocally asked the court to appoint counsel" at the February 7 hearing.

The court held a status conference on February 3, 2014. ECF No. 134. Trial was imminent, having been set months earlier for February 11, 2014. During the February 3 hearing, Summerhays stated that he might be retaining private counsel. *Id.* at 3. He said: "Unexpectedly a friend of mine in Vegas sent an attorney to me last week. He said to let you know he came in. You would know him. Dennis Cameron. He said he'd talk to you and he'd talk to Mr. Rachow [the U.S. Attorney]. I don't know if he's done anything. I did not hire him. He was hired from someone in Vegas. And he came to see me towards the end of last week." *Id.* Summerhays then asked for a month extension: "I don't see another month is going to hurt to see if I can get counsel like – counsel's has been told I can get, to prepare." *Id.* at 11. The court then admonished Summerhays that he needed to be as prepared as he could to go to trial, and that he needed to speak with Edwards, and use the benefit of having Edwards as standby counsel. *Id.* at 12. The court then confirmed that trial was set for a week later, to which Summerhays responded, "And if I can get an attorney between now and then?" *Id.* at 13. The court responded that it would not "guess on anything," but that if he was able to retain an attorney, the court would want to hear from the attorney directly. *Id.* at 14. The court added, "you should be prepared for the Court to deny a continuous because the request is coming so late. You're compromising the trial date. But I'm not prejudging anything. I'll hear what has to be said." *Id.* Once again, the court reminded Summerhays that Edwards was serving as standby counsel and was available to answer questions Summerhays may have. *Id.*

Three days later, on February 6, 2014, Summerhays advised that he wanted to change his pleas to guilty and avoid the trial scheduled the following week. A change of plea hearing was conducted on February 7. ECF No. 112. Summerhays argues in his Section 2255 petition, that it

8

was during this hearing that he requested appointment of counsel which was denied, and which was a violation of his Sixth Amendment rights.

The record shows Summerhays never requested appointment of counsel. At the February 7 hearing, Summerhays stated that he spoke to yet another attorney, Mr. Digesti. *Id.* at 3. He said: "I do want to change my plea to guilty. However, the reason I did it the way it is is [sic] I talked to Larry Digesti, and I've talked to another attorney. Not for going to court for trial, but to help me through this process. . . . I do want to plead guilty." *Id.* Summerhays then expressed that "I want the benefit of my attorney that <u>I'm just paying</u> for this, not to go to trial, to look at this" [referring to the memorandum prepared by government counsel (ECF 110)]. *Id.* at 3-4 (emphasis supplied). Summerhays clearly wanted to retain a private attorney at his own expense, not that he was asking the court to appoint counsel for him. Summerhays then says that he had not yet retained Mr. Digesti, but that if he could get a "continuance, not on the trial but to work with me on this, he would help me." *Id.* at 4. The court responded "You're certainly free to retain counsel for sentencing. And that – there's a value in that in the Court's view. As I've told you all along, I feel that you should be represented by counsel." *Id.* at 7. Further the court stated, "So if it's your desire to proceed with the pleas at this time, I would – I certainly would tell you that you would be free to retain counsel for sentencing or to represent yourself, just as you have. And the Court also recognizes that you have Mr. Edwards here, who is available as standby counsel, to provide similar assistance at public expense." *Id.* at 7-8. To which, Summerhays responds, "I think I'd like to retain my own [counsel], sir." *Id.* at 8. The court then asks, "But is it your desire to go ahead and enter pleas at this time?" *Id.* To which, Summerhays responds "Yeah, Let's see what happens." *Id.* In the hearing that followed, the court ultimately refused to accept Summerhays' pleas because of his disagreement with some of the factual basis outlined by the government which would have supported the pleas. The court reconfirmed the looming February 11 trial date. Neither at the February 7 hearing nor at any other time did Summerhays request that Digesti or any other private attorney be appointed to represent him, and at no time did any private counsel ever appear for Summerhays.

The trial commenced on February 11, 2014, the jury was selected, the government presented its first four witnesses and their testimony was damning. At the end of the day, Summerhays announced his desire to enter guilty pleas to all counts against him. ECF No. 175 at 166-169. The court cautioned Summerhays to think about it overnight and the issue would be readdressed the following morning. That morning, Summerhays again, with standby counsel Edwards at his side, stated that he had thought about it and it was his desire to plead guilty to all counts. The court then conducted an extensive canvas, Summerhays entered his guilty pleas, they were accepted by the court, and sentencing was scheduled. Summerhays' representation in his § 2255 petition that he asked the court to appoint him counsel for the entry of his pleas is a complete fabrication. Had he done so, the court would have considered reappointing standby counsel Edwards because Edwards was familiar with Summerhays' case and had been involved with representing him actively and as standby counsel in every hearing since September of 2013. Had Summerhays retained private counsel for entry of his pleas, the court would have considered a continuance; however, no private counsel ever made an appearance.

Summerhays' sentencing was continued over to March 30, 2015, as a result of repeated requests by Summerhays. Summerhays appeared for sentencing on that day and advised the court that he had "been trying to retain an attorney for some time, as you know, and I've partially retained one." ECF No. 177 at 3. He went on to explain that he was not prepared for sentencing and the court continued the sentencing. On April 3, 2015, the court reappointed standby attorney Edwards, this time to represent Summerhays at sentencing and not as standby counsel. ECF No. 152. At Summerhays' sentencing hearing on May 18, 2015, Edwards represented Summerhays and sentence was pronounced.

Summerhays chose to exercise his right to represent himself in October 2013, and at no time afterward did he request to be relieved of that right or to have counsel appointed to represent him. And at no time did Summerhays retain private counsel nor did any private counsel appear or request to appear on his behalf. If one had, the court would have heard from counsel and taken any requests into consideration. A Sixth Amendment claim under these facts had little to no likelihood of success on appeal. Appellate counsel clearly did not fall below an objective

10

standard of reasonable performance and petitioner was not prejudiced by appellate counsel's decision not to raise such an issue.

### C. Defendant's Sentencing and Appellate Counsel Were Not Ineffective.

Finally, in his second Supplemental Argument to his petition, Summerhays argues that both his sentencing and appellate counsel were ineffective for failing to challenge errors in the Presentence Investigation Report ("PSR"), in which he challenges the calculation of the criminal history points in his sentencing guidelines. ECF No. 192.

Generally, a Section 2255 petition "is not designed to provide criminal defendants multiple opportunities to challenge their sentence." *United States v. Johnson*, 988, F.2d 941, 945 (9th Cir. 1993). However, a petitioner may raise a claim for ineffective assistance of counsel for failure to raise an issue with the PSR for the first time on a 2255 petition "if they show both cause for their failure to make the objection earlier and prejudice for that failure." *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996). If the petitioner can establish the elements of ineffective assistance of counsel under *Strickland*, that will generally meet the cause and prejudice test. *Id.*

First, Summerhays argues that because he was sentenced for aggravated assault and violation of a protective order on the same day, those two offenses were required to be counted as a single offense for purposes of his criminal history calculation. Under the U.S. Sentencing Guidelines Manual, two or more offenses should be counted separately unless separated by an intervening arrest, offenses are contained in the same charging instrument, or sentences were imposed on the same day. U.S. Sentencing Guidelines Manual, § 4A1.2(a)(2) (U.S. Sentencing Comm'n 2018). However, courts have found that simply because a defendant was sentenced in two cases on the same day does not automatically make those cases "related" for purposes of section 4A1.2(a)(2). *See United States v. Piggie*, 316 F.3d 789 (8th Cir 2003) ("We have previously held . . . that two or more sentences imposed at the same time are not related for purposes of § 4A1.2(a)(2) if the cases proceeded to sentencing under separate docket numbers, and there was no formal order of consolidation." (internal quotations omitted)). Here, the two cases petitioner refers to proceeded under separate docket numbers and are markedly different.

The two offenses occurred 11 days apart, were perpetrated against different victims, were entirely different offenses, and were not part of a common plan or scheme. And there is nothing that indicates the two cases were formally consolidated. Even though petitioner was sentenced on the same day for those two offenses, they are clearly not related. Therefore, it was not an error for the court to consider each separately in order to calculate petitioner's total criminal history score in the PSR. Because this was not an error, neither sentencing nor appellate counsel fell below an objective standard of reasonable performance by not raising the issue.

Second, while under the guidelines suspended sentences are not calculated, if the suspension is revoked and the original term is reinstated, the resulting total is used to compute criminal history points. *Id.* § 4A1.2(k)(1). Petitioner argues that his criminal history points were miscalculated in paragraphs 60, 63, 64, 66, and 71. However, for each of these offenses, either the sentence of parole or the suspended sentence was revoked. Under paragraph 60, petitioner's suspended sentence was revoked, and his sentence was reinstated. Under paragraph 63, his probation was revoked, and it appears he was in jail for 61 days prior to the court again suspending a 180-day sentence. Under paragraph 64, his probation was revoked and again it appears he served 61 days prior to having his 180-day jail sentence suspended. Under paragraph 66, petitioner's jail sentence was suspended. He was discharged from treatment in January 25, 2000 after arriving drunk, and in July of 2000, he was given credit for time served. Under paragraph 71, petitioner served approximately one and one-half months before being paroled. His parole was subsequently revoked, and he served approximately one and one-half years. Therefore, the guideline point calculations were not in error, and neither petitioner's sentencing nor appellate counsel fell below an objective standard of reasonable performance for failing to raise the issue.

Finally, even if the criminal history points were calculated incorrectly and petitioner should have been a criminal history category V instead of VI, petitioner was not prejudiced by the error. For a defendant with a total offense level of 32 and a criminal history score of V the guidelines range is 188-235 months. Petitioner was sentenced to a term of 210 months which falls within the lower level sentencing range. And an additional 24 months was required by

Summerhays' Aggravated Identity Theft Conviction. Further the court finds that it would have imposed the same sentence of 234 months had petitioner's criminal history score been V instead of VI. Petitioner has an extensive criminal history stretching back to 1985. Additionally, as the Ninth Circuit already found on direct appeal, the sentence was substantially reasonable, especially given the sophistication of the scheme and the amount of loss. *See* ECF No. 179.

Petitioner's PSR was not in error and it was not objectively unreasonable performance by either sentencing or appellate counsel to not raise the issue. Neither counsel was ineffective.

### D. Certificate of Appealability is Denied

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255" unless a district court issues a certificate of appealability based on "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B). The government has requested that this court deny a certificate of appealability.

As discussed above, Summerhays has failed to raise a meritorious challenge based on ineffective assistance of standby counsel or a violation of his Sixth Amendment right to counsel, or to his sentencing by the court. As such, the court finds that Summerhays has failed to demonstrate that reasonable jurists would find the court's assessment of his claims debatable or wrong. *See Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006). Therefore, the court shall deny Summerhays a certificate of appealability as to his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

///

///

///

///

///

///

///

///

13

## IV. CONCLUSION

IT IS THEREFORE ORDERED that petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C.§ 2255 (ECF No. 184) is **DENIED**.

IT IS FURTHER ORDERED that the petitioner is **DENIED** a certificate of appealability.

IT IS SO ORDERED.

DATED this 26TH day of December, 2018.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE